**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | Civil Action No. 2:23-cv-00052-JRG |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| CHARTER COMMUNICATIONS, INC., | |
| Defendant. | |

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S
MOTION TO DISMISS THE AMENDED COMPLAINT FOR
<u>IMPROPER VENUE PURSUANT TO FRCP 12(b)(3)</u>**

## **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ......................................................................................................1

II.     STATEMENT OF THE ISSUES................................................................................2

III.    STATEMENT OF THE FACTS ................................................................................2

    A.      CCI Does Not Reside in Texas ........................................................................2

    B.      CCI Does Not Have a Physical Presence in the District...................................3

        1.      CCI Does Not Provide Any Services in Texas ...........................................3

        2.      The Spectrum Brand ................................................................................4

        3.      CCI Does Not Have Any Employees in Texas ...........................................4

        4.      CCI Does Not Own, Lease, Maintain, or Operate Property in Texas..........5

        5.      CCI Does Not Own or Lease Any Equipment in Texas ..............................5

    C.      CCI Subsidiaries Perform Distinct Business Functions.............................................6

    D.      CCI is the Manager of the Limited Liability Companies, Including SGC .............7

    E.      CCI Maintains Corporate Separateness from the LLC Subsidiaries ......................9

IV.     LEGAL STANDARD................................................................................................10

    A.      Entropic Has The Burden of Establishing Venue is Proper.................................10

    B.      Venue in Patent Cases.......................................................................................10

V.      ARGUMENT ...........................................................................................................11

    A.      Venue Is Improper As To CCI..............................................................................12

        1.      CCI Does Not Reside in this District............................................................12

        2.      CCI Has No Regular and Established Place of Business in this District...12

            (a)      CCI Has No Physical Place of Business in the District ................13

            (b)      CCI Has No Employees or Agents Conducting Business in the
                  District..........................................................................................13

(c) CCI Has No Regular and Established Place of Business in the District ........................................................................................... 16

B. The Presence and Activities of SGC Cannot Be Imputed To CCI To Establish Venue ................................................................................................ 17

VI. CONCLUSION ...................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Ambraco, Inc. v. Bossclip B.V.*,
 570 F.3d 233 (5th Cir. 2009) ...............................................................................11

*Andra Grp., LP v. Victoria's Secret Stores, LLC*,
 6 F.4th 1283 (Fed. Cir. 2021) .........................................................15, 17, 18, 19

*Bd. Of Regents v. Medtronic PLC.*,
 No. 17-CV-0942, 2018 WL 4179080 (W.D. Tex. July 19, 2018) .........................20

*Blue Spike, LLC v. Nook Dig., LLC*,
 No. 6:16-CV-1361-RWSJDL, 2017 WL 3263871 (E.D. Tex. July 28, 2017),
 *report and recommendation adopted sub nom. Blue Spike, LLC v. Caterpillar,*
 *Inc.*, 2017 WL 4129321 (E.D. Tex. Sept. 19, 2017).....................................17, 18, 19

*Cannon Mfg. Co. v. Cudahy Packing Co.*,
 267 U.S. 333 (1925).............................................................................................19

*Celgene Corp. v. Mylan Pharm. Inc.*,
 17 F. 4th 1111 (Fed. Cir. 2021) ...........................................................................17

*Hargrave v. Fibreboard Corp.*,
 710 F.2d 1154 (5th Cir. 1983) .............................................................................18

*Home Ins. Co. v. Thomas Indus., Inc.*,
 896 F.2d 1352 (11th Cir. 1990) ...........................................................................11

*In re Cordis Corp.*,
 769 F.2d 733 (Fed. Cir. 1985).............................................................................12

*In re Cray Inc.*,
 871 F.3d 1355 (Fed. Cir. 2017).......................................................10, 12, 13, 16

*In re Google*,
 949 F.3d 1338 (Fed. Cir. 2020).....................................................................13, 14

*In re Volkswagen Grp. of America, Inc.*,
 28 F.4th 1203 (Fed. Cir. 2022) ...........................................................................15

*In re ZTE (USA) Inc.*,
 890 F.3d 1008 (Fed. Cir. 2018)............................................................................10

*Interactive Toybox, LLC v. The Walt Disney Co.*,
 No. 17-CV-1137, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018).........................17

*IPVX Patent Holdings, Inc. v. Broadvox Holding Co., LLC*,
   No. 6:11-CV-0575, 2012 WL 13012617 (E.D. Tex. Sept. 26, 2012).....................................18

*Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*,
   No. 17-CV-2206, 2020 WL 5095499 (E.D. Pa. Aug. 28, 2020) ................................................8

*Meyer v. Holley*,
   537 U.S. 280 (2003).................................................................................................................14

*Nat'l Steel Car Ltd. v. The Greenbrier Cos., Inc*.,
   No. 6:19-cv-00721-ADA, 2020 WL 42889388 (W.D. Tex. July 27, 2020)...........................17

*Optic153 LLC v. Thorlabs Inc.*,
   No. 6:19-CV-00667, 2020 WL 3403076 (W.D. Tex. June 19, 2020) ....................................10

*Pia v. Supernova Media, Inc.*,
   No. 09-CV-00840, 2014 WL 7261014 (D. Utah Dec. 18, 2014) ..............................................8

*Pierce v. Shorty Small's of Branson Inc.*,
   137 F.3d 1190 (10th Cir. 1998) ..............................................................................................11

*Seven Networks, LLC v. Google LLC*,
   315 F. Supp. 3d 933 (E.D. Tex. 2018)......................................................................................12

*Sightline Payments, LLC v. Everi Holdings Inc.*,
   No. 21-CV-1015, 2022 WL 2078215 (W.D. Tex. June 1, 2022) ...........................................17

*Soverain IP, LLC v. AT&T, Inc.*,
   No. 2:17-CV-0293, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017)
   ("*Soverain IP I*") *report and recommendation adopted* 2017 WL 6452802
   (E.D. Tex. Dec. 18, 2017)...........................................................................................2, 17, 18

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   581 U.S. 258 (2017).............................................................................................................10, 11

## **Statutes and Rules**

28 U.S.C. § 1400(b) ...................................................................................................... *passim*

Del. Code Ann. tit. 6, § 18–101(12) ...............................................................................................8

Del. Code Ann. tit. 6, §§ 18–101, *et seq.* ......................................................................................8

Del. Code Ann. tit. 6, § 18–402 ...............................................................................................8, 18

Fed. R. Civ. P. 12(b)(3)...........................................................................................1, 2, 11, 20

## **Other Authorities**

Darla M. Fera, *Investment Management Compliance Guide*, ¶ 723 LIMITED
    LIABILITY COMPANIES, *available at* 2017 WL 11025924 ................................................7

https://www.puc.texas.gov/industry/communications/business/sicfa/sicfa.aspx.............................3

Restatement (Third) of Agency § 1.01 ........................................................................................14

Defendant Charter Communications, Inc. ("CCI" or "Defendant") moves, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint (Dkt. 11) filed by Plaintiff Entropic Communications, LLC ("Entropic") for improper venue.  The Amended Complaint alleges CCI provides "cable television and internet services" that infringe its patents.

## I.   INTRODUCTION

In the Amended Complaint, Entropic alleges that venue is proper in this district because CCI is "the corporate manager of its subsidiary LLCs," over which CCI purportedly "has the right to exercise near total control of" its subsidiaries through "LLC agreements," and "employ[s] employees in this district, and that own[s], store, sell, demonstrate, and lease equipment in this district."  Dkt. 11 ¶¶ 5-11, 22-40.  However, venue-related discovery in a separate action commenced by Entropic against CCI has confirmed that CCI is not incorporated in Texas, does not own or lease property in this district, offers no products or services, and has no employees here.  *Entropic Comms., LLC v. Charter Comms., Inc.*, No. 22-CV-0125(JRG) (E.D. Tex.), Dkts. 61 & 75.

Recognizing that CCI has no presence in the district, Entropic seeks to attribute the presence and actions of CCI's subsidiaries in this district to CCI under the theories of alter ego or agency.[1]  The Amended Complaint includes allegations that reference four addresses under the Spectrum brand at which CCI allegedly provides "Accused Services" through the "Accused Set Top Products."  Dkt. 11 ¶¶ 22-40.  However, these sites are leased or owned, and maintained and operated by one of CCI's separate and distinct subsidiaries, Spectrum Gulf Coast, LLC ("SGC"), which is not named as a defendant in this action.  To impute SGC's actions to CCI under an alter ego theory, Entropic must meet the "difficult standard" of establishing a "lack of formal corporate

---

[1] "CCI's subsidiaries" refer to both its direct and indirect subsidiaries.

separateness." *Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-CV-0293, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017) ("*Soverain IP I*") *report and recommendation adopted* 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017).  Entropic cannot meet that "difficult" standard because CCI maintains all corporate formalities as a parent and as a manager of its subsidiary LLCs, such as SGC.  Nor can Entropic demonstrate that CCI's subsidiaries or their employees are its agents of CCI because they are not controlled by CCI or authorized to act and do not act on CCI's behalf.  Thus, the activities of CCI's subsidiaries and/or managed LLCs cannot form the basis for venue.  Accordingly, the Court should dismiss this case pursuant to Rule 12(b)(3) for lack of venue.[2]

## II.     STATEMENT OF THE ISSUES

Pursuant to Local Civil Rule CV-7(a)(1), the issue to be decided by the Court in connection with this Motion is whether Entropic's Amended Complaint should be dismissed under Federal Rule 12(b)(3) for failure to establish proper venue.

## III.    STATEMENT OF THE FACTS

### A.     <u>CCI Does Not Reside in Texas</u>

CCI is not incorporated in Texas.  Dkt. 11 at ¶ 4.  It is a Delaware corporation with its principle place of business in Connecticut.  *Id.*; Ex. 1, Declaration of Jennifer A. Smith ("Smith Decl."), ¶ 5.

---

[2] Because CCI (like Entropic) is a Delaware corporation, Entropic could have filed its action Delaware.  28 U.S.C. § 1400(b).

## B.  CCI Does Not Have a Physical Presence in the District

### 1.  *CCI Does Not Provide Any Services in Texas*

CCI is a holding company, not an operating company, and therefore does not provide any services, including the Accused Products and Services, in Texas.[3]  Ex. 2, Dec. 2, 2022 Deposition of Thomas Proost ("Proost Dep."), 57:13-15.  Nor is CCI licensed by the State of Texas to provide these services.  The Public Utility Commission of Texas requires "any entity that proposes to provide cable or video service anywhere in the State of Texas . . . to obtain a SICFA [State-Issued Certificate of Franchise Authority], unless they are currently providing cable or video service in a municipality that has an unexpired municipal franchise."[4]  CCI does not hold a SIFCA, but SGC does.  Ex 3., Declaration of Jeff Burdett ("Burdett Decl.") at ¶ 5.  SGC, which does provide such service in Texas, "is the only CCI subsidiary that is" licensed to do so.  *Id.*

The customer service documentation reflects this reality.  When a customer purchases an internet or video package, they accept certain terms and conditions specifying that "services will be provided by a number of different entities"; in Texas, customers receive those video and internet services from SGC.  Ex. 2, Proost Dep., 80:7-82:13, 86:13-87:19; Ex. 4, Dec. 13, 2022 Deposition of Daniel Boglioli ("Boglioli Dep."), 49:9-51:3, 65:9-68:2.  The terms and conditions for such services are not between the customer and CCI; and, the customers are treated as customers of the relevant entity that provides the specific services, such as SGC in Texas.  Ex. 2, Proost Dep., 63:1-15, 88:1-11; Ex. 4, Boglioli Dep., 49:4-50:24.

---

[3] The Amended Complaint defines the Accused Services as "cable television and internet services."  Dkt. 11 ¶ 27.  Accused Products refers to certain set top boxes and cable modems.  *Id.* ¶ 27.

[4] *See* https://www.puc.texas.gov/industry/communications/business/sicfa/sicfa.aspx.

### 2.     *The Spectrum Brand*

Neither CCI, nor its subsidiaries, market any products or services under CCI's name.  Ex. 2, Proost Dep., 100:11-12 (testifying that the brand "fully transitioned" from Charter to Spectrum). CCI subsidiaries use the Spectrum brand "for all customer-facing functions in all retail stores" and any customer-facing employee uses a Spectrum signature block in email correspondence.  Ex. 4, Boglioli Dep., 95:7-16; *see also id.* at 55:17-19; Ex. 2, Proost Dep., 88:12-14 (testifying that customers receive bills under the Spectrum brand name).  Accordingly, CCI does not hold itself out to the public as having a presence in Texas or providing services there.

### 3.     *CCI Does Not Have Any Employees in Texas*

While CCI had some employees at one point in time, since at least 2020 CCI has not had any employees, including in the State of Texas.  Ex. 5, Declaration of Martin C. Armstrong ("Armstrong Decl.") at ¶ 4; Ex. 2, Proost Dep., 71:3-10, 73:20-74:11, 104:4-15; Ex. 4, Boglioli Dep., 42:4-43:2.  Rather, Charter Communications, LLC ("CC LLC"), a subsidiary of CCI, is the entity that employs all individuals who work for any of the subsidiary LLCs that provide various business functions in support of the Spectrum brand.  Ex. 2, Proost Dep., 71:3-10; Ex. 4, Boglioli Dep., 35:22-36:3.  ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████    Ex. 4, Boglioli Dep., 36:12-16; Ex. 2, Proost Dep., 72:7-21 ████████



<sup>5</sup>███████████████████████████████████████████████████████████████
████████████████████████████████████████████    Ex. 2, Proost Dep., 71:14-21,
72:10-19; Ex. 4, Boglioli Dep., 69:19-70:10, 72:3-17.  ████████████████████████
███████████████████████████████████████████████████████████████████
████████████████    Ex. 4, Boglioli Dep., 72:3-74:8.

███████████████████████████████████████████████ Ex. 4, Boglioli Dep.,

51:20-25 ████████████████████████████████████████████████████

████████████████ ; *see also* Ex. 4, Boglioli Dep., 72:3-73:22, 75:12-76:14.  CCI does not

participate, nor is it consulted, in the hiring and firing of CC LLC employees.  Ex. 4, Boglioli Dep.,

42:1-44:9, 47:8-13, 48:2-24; Armstrong Decl. ¶ 5.

### 4.   *CCI Does Not Own, Lease, Maintain, or Operate Property in Texas*

CCI does not own, lease, maintain or operate property in Texas, including the four

properties identified in the Amended Complaint.  Ex. 6, Declaration of Teresa Nelson ("Nelson

Decl.") at ¶¶ 5, 8.  Instead, each location is owned or leased by SGC.  *Id.* ¶ 8.  As explained above,

CCI does not have any employees who work at those locations, nor does it maintain or operate

those stores.  Rather, ███████████████████████████████████████████

██████ Ex. 2, Proost Dep., 85:6-18; Ex. 4, Boglioli Dep., 55:20-56:5, 88:14-21.

### 5.   *CCI Does Not Own or Lease Any Equipment in Texas*

As mentioned, CCI does not own or lease the accused products.  They are owned by ████████

█████████████████████ leased by it to the various entities, such as SGC, for a fee pursuant to lease

agreements.  Ex. 4, Boglioli Dep., 54:13-55:5.  SGC then leases (or subleases) the products to

Spectrum customers for a fee.[6]  *Id.* at 55:7-14.  SGC, not CCI, is the entity that provides or ships

devices to customers.  *Id.* at 54:4-9, 86:2-20; Ex. 7, Sample Equipment Lease Agreement between

SGC and Charter Distribution LLC.  Each operating entity, ███████████████████████████

██████████ decides the needs of the operating unit, such as the amount of products or equipment

to lease.  Ex. 4, Boglioli Dep., 88:14-21.

---

[6] ██████████████████████████████████████████████████████
█████████████████████████████████████████ Ex. 4, Boglioli Dep, 55:20-56:12.

### C.    CCI Subsidiaries Perform Distinct Business Functions

As previously stated, CCI does not have any business operations of its own.  Ex. 2, Proost Dep., 57:13-15.  It is the ultimate corporate parent of numerous LLCs that each perform specific business functions in support of the Spectrum brand.  Ex. 1, Smith Decl. ¶ 5; Ex. 2, Proost Dep., 37:16-24, 57:16-58:7.  Each LLC operates pursuant to a delegation of authority policy, Ex. 2, Proost Dep., 58:8-16, and they act in accordance with their operative formation documents, including governing agreements, and pursuant to the pertinent Delaware statute governing LLCs, *see* Section III.D, *infra*.

For example, there are different LLC subsidiaries that provide customers with cable or Voice over IP (or VoIP) services in particular geographic regions.  Ex. 2, Proost Dep., at 57:16-58:7.  When asked why certain LLC subsidiaries "exist," CCI's corporate representative responded:





*Id.* at 67:16-69:8; *see also id.*, at 62:9-22 (explaining certain functions of an LLC subsidiary), 64:7-65:20 (same), 73:6-19 (explaining CC, LLC's function), 74:18-77:16 (explaining the function of additional LLC subsidiaries), 77:17-78:2 (explaining the function of the cable franchise subsidiaries, including SGC, in different geographic regions).

Likewise, advertising and marketing responsibilities span "multiple entities"; guidelines for the Spectrum brand is set at a corporate level, ███ ██████████████████████████████ ███████████████████████████████████ Ex. 4, Boglioli Dep, 96:11-97:15. There are also regional marketing departments in each geographic sub-region ██████ ████████████████████████████████████████████ ██████ *Id.* The regional marketing departments ████████████████████████ ████████████████████████████████████████████ ██████ *Id.* at 96:21-97:15. These regional efforts ████████████████████ ██████ *Id.* at 97:16-18.

### D.   CCI is the Manager of the Limited Liability Companies, Including SGC

An LLC is "an unincorporated organization that is formed under state law by filing a certificate of formation or other required formation documentation."  Darla M. Fera, *Investment Management Compliance Guide*, ¶ 723 LIMITED LIABILITY COMPANIES, *available at* 2017 WL 11025924.  Under the Delaware Limited Liability Company Act (the "LLC Act"), an LLC

may be managed either by its members or by a non-member manager. Del. Code Ann. tit. 6, § 18–402. The members that form the LLC company designate who will manage the LLC through an LLC agreement. *Id.* If the operating agreement provides that a company is managed by a non-member, the "management of the limited liability company, to the extent so provided, shall be vested in the manager" chosen by the members. *Id.*; Del. Code Ann. tit. 6, § 18–101(12) (defining a "manager" as a person so designated in an LLC agreement). The latter scenario is often referred to as a "manager-managed" company, which is a "legally different business organization than a corporation, with a different management structure (manager-managed as opposed to a board of directors)." *Pia v. Supernova Media, Inc.*, No. 09-CV-00840, 2014 WL 7261014, at *3 (D. Utah Dec. 18, 2014) (analyzing Delaware law). Further, the LLC Act does not require any sort of annual or monthly member or manager meetings. *See* Del. Code Ann. tit. 6, §§ 18-101, *et seq.*; *Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*, No. 17-CV-2206, 2020 WL 5095499, at *15 (E.D. Pa. Aug. 28, 2020) (observing "member meetings are not required by . . . the Delaware Limited Liability Company Act.").

Each of the relevant LLCs have been set up pursuant to, and in conformity with, the LLC Act. CCI has been appointed as a manager of different limited liability companies (through their respective members) that perform the separate business functions as discussed above. Ex. 2, Proost Dep., 59:3-6. For example, SGC is an LLC incorporated under the laws of Delaware and is a separate, indirect subsidiary of CCI. SGC provides internet and video (*i.e.*, cable) services under the Spectrum brand to customers in certain regions within the United States, including Texas. Ex. 2, Proost Dep., 40:4-22, 70:8-71:1, 79:13-80:5; Ex. 4, Boglioli Dep., 49:18-22. Consistent with the LLC Act, Time Warner Cable Enterprises LLC, as the sole member of SGC, appointed CCI as the manager of SGC pursuant to an Amended and Restated Limited Liability Company

Agreement.[7]  Ex. 8, Am. and Restated LLC Agreement of Time Warner Cable Texas LLC, dated

May 18, 2016 (the "SGC LLC Agreement").  The SGC LLC Agreement sets out the "governance"

of the LLC and includes the powers and limitations of CCI as a manager.  *Id.* § 4; Ex. 2, Proost

Dep., 59:3-17.

The SGC LLC Agreement provides that 

CCI.  Ex. 8, SGC LLC Agreement, § 4(a)(i).  Moreover,

the SGC LLC Agreement provides, among other things,

Entropic does not allege that there has been any violation of the applicable Delaware LLC

Act or governing agreements in the formation or management of SGC (or any other LLC).

    **E.**    <u>**CCI Maintains Corporate Separateness from the LLC Subsidiaries**</u>

CCI's corporate records are maintained separate from its LLC subsidiaries, care is taken to

ensure that any actions taken by CCI are separate from those taken by its LLC subsidiaries,

---

[7] The SGC LLC Agreement is between Texas Warner Cable Texas LLC ("TWCT") and Time Warner Cable Enterprises LLC, as the sole member of TWCT.  Ex. 8, SGC LLC Agreement.  SGC was formerly TWCT.  Ex. 10, Certificate of Amendment, dated Sept. 12, 2018; Ex. 11, Affidavit of Constance C. Kovach, dated October 29, 2018.

██████████████████████████████████ Ex. 2, Proost Dep.,

37:16-38:22, 60:5-20; Ex. 4, Boglioli Dep, 34:5-37:8, 70:15-71:10, 72:3-73:22 ████████

█████████████████████████████████ 75:12-76:14, 83:4-12

█████████████████████████████████

## IV.    LEGAL STANDARD

### A.    Entropic Has The Burden of Establishing Venue is Proper

Venue in patent cases is exclusively governed by Section 1400(b) of Title 28 of the United States Code. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 267-69 (2017). Federal Circuit law applies to matters unique to patent law, such as section 1400(b), while regional Circuit law apply to questions not unique to patent law. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017); *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). Under Federal Circuit law, a plaintiff bears the burden of establishing that venue in this district is proper. *In re ZTE*, 890 F.3d at 1013; *Optic153 LLC v. Thorlabs Inc.*, No. 6:19-CV-00667, 2020 WL 3403076, at *1 (W.D. Tex. June 19, 2020).

### B.    Venue in Patent Cases

The "requirement of venue [in patent cases] is specific and unambiguous; it is not one of those vague principles which, in the interests of some overriding policy, is to be given liberal construction," *Cray*, 871 F.3d at 1361 (citation omitted), and "it is important 'not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases.'" *In re ZTE*, 890 F.3d at 1014 (quoting *Cray*, 871 F.3d at 1361). Accordingly, under Section 1400(b), venue is proper either (1) in the district in which the defendant resides, or (2) where it has a regular and established place of business and has committed acts of infringement. 28 U.S.C. §1400(b). "[A]

domestic corporation 'resides' only in its [s]tate of incorporation for purposes of the patent venue statute." *TC Heartland*, 581 U.S. at 262.

Facts relating to venue pled in the complaint are accepted as true "only to the extent that such facts are uncontroverted by [a] defendant's affidavit." *Pierce v. Shorty Small's of Branson Inc.,* 137 F.3d 1190, 1192 (10th Cir. 1998) (citing *Home Ins. Co. v. Thomas Indus., Inc.,* 896 F.2d 1352, 1355 (11th Cir. 1990)).  A district court may look beyond the complaint when deciding a motion to dismiss based on improper venue. *Ambraco, Inc. v. Bossclip B.V.,* 570 F.3d 233, 238 (5th Cir. 2009) (stating that under Rule 12(b)(3) a court may look at evidence beyond the facts alleged in the complaint and its attachments).

## V.    ARGUMENT

CCI is a holding company with no employees, no product or service offerings to customers, no real property interests in the district and no ownership of the accused products.  There is a subsidiary of CCI that does operate here, but Entropic chose not to sue that entity, and chose not to sue CCI in Delaware where it resides.

Instead, Entropic seeks to attribute the actions of SGC, CCI's subsidiary, to CCI under the guise of agency or alter ego theories without satisfying any of the elements necessary to proceed under those theories.  The employees assigned to work in the SGC stores in the district are in no sense agents of CCI.  They are not employed by CCI, not controlled by CCI, have no authority to act on CCI's behalf, and do not carry out the business of CCI.  To overcome its utter failure to establish agency or alter ego, Entropic asks the Court to disregard the separate corporate forms merely because SGC, through its sole member, appointed CCI as its manager.  Entropic's request, however, undermines the Delaware LLC Act, which explicitly contemplates and permits an LLC's members to appoint a separate corporate manager.  Entropic has not uncovered any evidence to remotely suggest that CCI was improperly appointed to act as manager of SGC or that it fails to

observe the corporate forms of its distinct subsidiaries.  Nor has Entropic asserted any allegations

that SGC, or any other LLC, has not been properly established and separately maintained.  For

these reasons, and as explained below, venue is improper in this district.

### A.   Venue Is Improper As To CCI

#### 1.   CCI Does Not Reside in this District

Entropic admits that CCI is not incorporated in Texas.  Dkt. 11 ¶ 4; Smith Decl. at ¶ 5.

Thus, to meet its burden in establishing that venue is proper, Entropic must show that CCI has a

regular and established place of business and committed acts of infringement in this district.[8]  *See*

*Cray*, 871 F. 3d at 1360.  For the reasons set forth below, Entropic cannot meet this burden.

#### 2.   CCI Has No Regular and Established Place of Business in this District

The "three general requirements relevant to the inquiry" of whether a defendant has a

regular and established place of business are: "(1) there must be a physical place in the district;

(2) it must be a regular and established place of business; and (3) it must be the place of the

defendant.  If any statutory requirement is not satisfied, venue is improper under § 1400(b)."  *Cray*,

871 F.3d at 1360.  Entropic cannot satisfy any of these requirements because CCI has no regular

and established place of business in the district.

---

[8] CCI denies that it has committed acts of infringement anywhere, including in this district, because
it does not own, lease, or distribute the Accused Set Top Products and because it does not provide
the Accused Services.  *See* Sections III.B.1 & 5, *supra*.  On this basis, venue is improper.  *See*
Section 1400(b) (requiring acts of infringement and a regular and established place of business to
establish venue).  However, because "[t]he issue of infringement is not reached on the merits in
considering venue requirements," CCI focuses this motion on Entropic's failure to meet its burden
to establish that CCI has a regular and established place of business in the district.  *See Seven
Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 942-43 & n.10 (E.D. Tex. 2018) (quoting *In
re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)).

### (a)      CCI Has No Physical Place of Business in the District

The first *Cray* factor requires that there "must be a physical place in the district."  871 F.3d at 1362.  A "place" must be a "physical, geographical location in the district from which the business of the defendant is carried out."  *Id.*

CCI does not have any physical locations anywhere in Texas.  Ex. 6, Nelson Decl., ¶ 5. SGC, not CCI, leases or owns the properties that are identified in the Amended Complaint and are located within this District.  Nelson Decl. at ¶¶ 5, 8.  Almost every single property agreement concerning those properties and any other property in the district reflects the fact that SGC, not CCI, is the real property interest-holder.[9]  Ex. 12, Chart Summarizing Properties in E.D. Tex. There is no evidence that CCI possesses or controls any physical space in the district.  *In re Google*, 949 F.3d 1338, 1343 (Fed. Cir. 2020) (holding that the statute could be satisfied by any physical place that the defendant could "possess[ ] or control." (quoting *Cray*, 871 F.3d at 1363)).  And SGC, not CCI, operates the Spectrum-branded stores to provide services to customers.  Ex. 2, Proost Dep., 85:6-18; Ex. 4, Boglioli Dep., 51:14-52:7.  For these reasons alone, venue is improper.

### (b)      CCI Has No Employees or Agents Conducting Business in the District

Under the second *Cray* factor, a "'place of business' generally requires an employee or agent of the defendant to be conducting business in that place."  *In re Google*, 949 F.3d at 1344. Therefore, even if the properties Entropic identified in its Amended Complaint did belong to CCI (and they do not), Entropic must still establish that CCI has an employee or agent operating out of those properties.  In the Amended Complaint, Entropic does not even allege that CCI has any such

---

[9] SGC either owns or leases every property within this district, except for two properties that are owned or leased by different LLC subsidiaries.  Ex. 12, Chart Summarizing Properties in E.D. Tex.  CCI does not own or lease any property in this district.

employees, only that *subsidiaries* of CCI "employ employees in this district[,]" Dkt. 11 ¶¶ 8, 11; *but see id.* ¶ 34 ("*Upon information and belief*, the *Spectrum stores* are staffed by persons directly employed by Charter[.] (emphases added)).  Here, as explained above, CCI does not have any employees *at all* and therefore does not have any employees who regularly conduct business in the district.  Ex. 5, Armstrong Decl. at ¶ 4; Ex. 2, Proost Dep., 71:3-10, 73:20-74:11, 104:4-5; Ex. 4, Boglioli Dep., 42:4-43:2; *see also* Section III.B.3.

Entropic does not allege, nor could it, that SGC (or any employee allocated to SGC) is an agent of CCI.  An agency relationship is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act."  *In re Google*, 949 F.3d at 1345 (quoting Restatement (Third) of Agency § 1.01).  The elements of agency are: "(1) the principal's 'right to direct or control' the agent's actions, (2) 'the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf,' and (3) the 'consent by the [agent] to act.'"  *Id.* (quoting *Meyer v. Holley*, 537 U.S. 280, 286 (2003)).  Entropic cannot satisfy any of these elements.

As for the first element–control–the Amended Complaint contains allegations that CCI "has the right to exercise near total control of each entity's operations" through LLC agreements.  Dkt. 11 ¶¶ 8, 11.  However, this alone cannot establish an agency relationship because there is nothing suggesting that the relationship between CCI and SGC is anything more than that between LLC manager and a managed LLC.  CCI itself does not maintain or operate the Spectrum-branded stores that are owned or leased by SGC in this district, Ex. 2, Proost Dep., 85:6-18, nor does CCI participate in the hiring and firing of employees working in the SGC-owned or -leased stores in the district, *id.* at 71:3-10, 73:20-74:11, 104:4-5; Ex. 4, Boglioli Dep., 42:4-43:2; Armstrong Decl.,

at ¶ 5; *see Andra Grp., LP v. Victoria's Secret Stores, LLC*, 6 F.4th 1283, 1288-899 (Fed. Cir. 2021).  Those activities are carried out by the employees allocated to the properties identified in the Amended Complaint.  Ex. 4, Boglioli Dep., 42:4-44:9, 47:8-13, 48:2-24.  Such actions can only be attributed to CCI by virtue of its having been appointed manager of SGC and disregarding the corporate separation of these distinct entities; but Entropic fails to make any showing that would justify the extreme measure of piercing the corporate veil.  *See* Section V.B, *infra*.

Nor can Entropic satisfy the remaining two elements for showing that SGC is CCI's agent. In addition to establishing that the principal controls the agent, Entropic must show "(2) the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf, and (3) the consent by the [agent] to act." *Andra Grp.*, 6 F.4th at 1288 (internal quotations omitted).  There is no support for any contention that CCI has manifested consent for SGC, or employees working at stores owned or leased by SGC, to act on CCI's behalf, and there is no evidence that any entity consented to act on CCI's behalf.  Entropic has not even attempted to allege or meet these elements to proceed under an agency theory.

While these facts alone are reason to reject any agency theory, there is more.  The SGC LLC Agreement does not contain any provision authorizing SGC to act as an agent *of CCI*.  Rather,

████████████████████████████████████████████████████████████████████

the exact opposite of what Entropic must show.  ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████  Although not by itself

dispositive, the Federal Circuit has held this evidence is "relevant" to determine whether one entity is another's agent.  *See In re Volkswagen Grp. of America, Inc.*, 28 F.4th 1203, 1212 (Fed. Cir.

2022) ("Our holding is further bolstered by—the relevant though not dispositive—consideration that the parties to the franchise agreements disclaim an agency relationship.")

Because CCI has no employees or agents in the district, Entropic cannot, for this additional reason, meet its burden to show that venue is proper.

### (c)     CCI Has No Regular and Established Place of Business in the District

When analyzing the third *Cray* factor, whether a "place of business" is "of the defendant," courts consider a number of non-exclusive factors, including "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place," "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself." *Cray* at 1363-64.

None of these factors support venue in this case.  Entropic cites to four properties located in this district to allege that "Charter has regular and established places of business in this district." Dkt. 11 ¶¶ 22, 26 35, 38.  Yet, CCI does not own or lease any of the properties listed in the Amended Complaint.  *See* Section III.B.4, *supra*.  Entropic also contends that CCI "deploys Accused Set Top Boxes to many thousands of locations (customer premises)" in this district, and suggests that the Spectrum logo displayed on the properties somehow establishes that CCI conducts business in this district.  Dkt. 11 ¶¶ 39; *id.* ¶¶ 30-32.  However, the pertinent question is whether "the *defendant*," that is CCI, "places *its name* on a sign associated with or on the building itself." *Cray*, 871 F.3d at 1364 (emphasis added).  Here, there are plainly no allegations nor any evidence that CCI's name is associated with any properties in this district or in Texas more broadly. The allegations plainly show that the "Spectrum" brand name is associated with the properties identified in the Amended Complaint, not CCI or Charter.  Dkt. 11 ¶ 32.  As previously explained, the Spectrum brand is used "for all customer-facing functions in all retail stores" and there is no

advertising or marketing of products under CCI's name.  Ex. 4, Boglioli Dep., 95:7-16; *see also id.* at 55:17-19; Ex. 2, Proost Dep., 88:12-14, 100:11-12.

Furthermore, CCI does not have any employees in Texas; does not conduct commercial business with the public; and does not make, manufacture, or sell any product anywhere, including in Texas.  *See* Section III.B, *supra*.  Indeed, CCI does not maintain or operate the physical locations identified in the district.  Ex. 2, Proost Dep., 85:6-18.  Thus, not a single factor supports Entropic's assertion of venue and its pleading should be dismissed for lack of venue for this reason as well.

**B.**     **The Presence and Activities of SGC Cannot Be Imputed To CCI To Establish Venue**

Recognizing that CCI does not have any presence or business in this district, the Amended Complaint contains allegations suggesting that the "regular and established place of business" of SGC, as well as any subsidiary of CCI, should be imputed to CCI for venue purposes.  Dkt. 11 ¶¶ 5-11, 22-40.  CCI and a subsidiary LLC such as SGC, however, can only be considered a single entity for purposes of venue if that LLC is CCI's alter ego.  *Id.*  This is "a difficult standard to meet" and is rarely, if ever, satisfied in context of  Section 1400(b).[10]  *Soverain IP I*, 2017 WL 5126158, at *1; *see also Celgene Corp. v. Mylan Pharm. Inc.*, 17 F. 4th 1111, 1127 (Fed. Cir. 2021) (rejecting alter ego theory); *Andra Grp.*, 6 F.4th at 1290 (same); *Sightline Payments, LLC v. Everi Holdings Inc.*, No. 21-CV-1015, 2022 WL 2078215, *7 (W.D. Tex. June 1, 2022) (same); *Nat'l Steel Car Ltd. v. The Greenbrier Cos., Inc.*, No. 6:19-cv-00721-ADA, 2020 WL 42889388, at *3-5 (W.D. Tex. July 27, 2020) (same); *Interactive Toybox, LLC v. The Walt Disney Co.*, No. 17-CV-1137, 2018 WL 5284625, at *4 (W.D. Tex. Oct. 24, 2018) (same); *Blue Spike, LLC v. Nook Dig., LLC*, No. 6:16-CV-1361-RWSJDL, 2017 WL 3263871, at *3 (E.D. Tex. July 28, 2017),

---

[10] "Corporate separateness is an issue of regional-circuit law."  *Celgene Corp.*, 17 F.4th at 1125.

*report and recommendation adopted sub nom. Blue Spike, LLC v. Caterpillar, Inc.*, 2017 WL 4129321 (E.D. Tex. Sept. 19, 2017) (same); *IPVX Patent Holdings, Inc. v. Broadvox Holding Co., LLC*, No. 6:11-CV-0575, 2012 WL 13012617, at *3 (E.D. Tex. Sept. 26, 2012) (same).  Entropic has done nothing to meet this "difficult standard."

First, Entropic's principal basis for attempting to disregard the corporate separateness of CCI and SGC is the mere fact that the SGC LLC Agreement appoints CCI as its manager.  *See* Dkt. 11  ¶¶ 7-11.  The SGC LLC Agreement or any other agreement does not convert the actions of SGC into the actions of CCI.  The agreement and Delaware law are explicit and unequivocal: ███████████████████████████████████████████████████████  Ex. 8, SGC Agreement § 4(a)(i); Del. Code Ann. tit. 6, § 18-402.  Entropic does not allege, nor has any discovery revealed, that CCI acted in violation, or beyond the scope of, its role as manager as provided in the SGC LLC Agreement or pursuant to the LLC Act.  *IPVX Patent Holdings*, 2012 WL 13012617, at *3 ("While [plaintiff] contends that [the parent-defendant] must control [its subsidiary-LLC that conducts business in this district] because" the parent-defendant manages "its subsidiary, there is no evidence that the control exerted by [the parent-defendant] is greater than that 'normally associated with common ownership and directorship.'" (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160-61 (5th Cir. 1983))).  Accordingly, Entropic cannot impute SGC's actions as a managed LLC to CCI, as a manager of the LLC, as a basis for venue.

Second, to the extent that Entropic alleges that CCI and its subsidiary LLCs are alter egos (separate and apart from any LLC agreement) such that "any 'regular and established place of business'" of SGC should be imputed to CCI, Entropic must establish that SGC and CCI "lack formal corporate separateness."  *Soverain IP I*, 2017 WL 5126158, at *1 (declining to impute the presence of a related company to another related company); *Andra Grp.*, 6 F.4th at 1289 ("A

threshold inquiry when determining whether the place of business of one company can be imputed to another, related company is whether they have maintained corporate separateness." (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 334-35 (1925))).  When the entities "have maintained corporate separateness, the place of business of one corporation is not imputed to the other for venue purposes."  *Andra Grp.*, 6 F.4th at 1289; *Blue Spike*, 2017 WL 3263871, at *3 ("[T]he mere existence of a wholly-owned subsidiary in a judicial district does not, by itself, suffice to establish venue over the subsidiary's parent corporation.").

Here, Entropic cannot show any lack of corporate separateness.  The Amended Complaint does not contain *any* allegations suggesting that CCI, SGC, or any other subsidiary LLC, have failed to maintain corporate separateness or formalities.[11]  The fact is, CCI and its subsidiaries are distinct, separate entities that observe all required corporate formalities separating them from each other, including the maintenance of their own corporate books and records, meetings of shareholders (for CCI), identification of LLC members and appointment of directors and officers. Smith Decl. at ¶¶ 5, 7; *see* Sections III.C & D, *supra*.  There has been nothing to suggest otherwise. Although the Amended Complaint contains allegations that Spectrum-branded stores within this district bare the "Spectrum" logo, which logo "refers to 'a suite of advanced broadband services offered by Charter Communications, Inc.,'" Dkt. 11 ¶ 32, *id.* ¶ 6, the "use of the common or generic name [Spectrum] on the exterior of [the subsidiary's building], as well as the press release

---

[11] Entropic suggests that CCI has disregarded the corporate forms because it represented in "proceedings before the United States International Trade Commission that Charter, together with its controlled subsidiaries, is a cable operator that provides television services through digital set-top boxes to subscribers under the Spectrum brand."  Dkt. 11 ¶ 24.  In that filing, CCI explained that it provided services through its subsidiaries and that CCI "together with its controlled subsidiaries, is a holding company whose principal asset is a controlling equity interest in Charter Communications Holdings, LLC, an indirect owner of Charter Communications Operating, LLC under which substantially all of the operations reside."  *Compare* Dkt. 11 ¶ 24 *with* Ex. 13, ITC Submission, ¶ 15.

announcing the business," cannot support venue under the patent statute, where the corporate formalities between related companies remain intact, such as here. *Bd. Of Regents v. Medtronic PLC.*, No. 17-CV-0942, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018).

Therefore, Entropic, cannot impute SGC's actions in this district to CCI.

## VI.   CONCLUSION

Plaintiff's Amended Complaint should be dismissed for improper venue under Federal Rule of Civil Procedure 12(b)(3).

Dated: April 21, 2023                          Respectfully submitted,

*/s/  Elizabeth Long*
Daniel L. Reisner, *pro hac vice* forthcoming
David Benyacar, *pro hac vice* forthcoming
Elizabeth Long
Albert J. Boardman, *pro hac vice* forthcoming
Melissa Brown, *pro hac vice* forthcoming
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York, 10019-9710
Telephone: (212) 836-8000
Email: daniel.reisner@arnoldporter.com
Email: david.benyacar@arnoldporter.com
Email:  elizabeth.long@arnoldporter.com
Email:  albert.boardman@arnoldporter.com
Email:  melissa.brown@arnoldporter.com

Deron R. Dacus
State Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
Email: ddacus@dacusfirm.com

***Attorneys for Defendant
Charter Communications, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on April 21, 2023.


*/s/  Elizabeth Long*
Elizabeth Long


**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

Pursuant to Local Rule CV-5(a)(7)(B), I hereby certify that a Motion for Leave to Seal the foregoing document has been filed.


*/s/  Elizabeth Long*
Elizabeth Long