UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, <br><br> Plaintiff <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> Defendants. | Civil Action No. 2:23-cv-00052-JRG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT FOR IMPROPER VENUE PURSUANT TO FRCP 12(b)(3)**

315548089.1

**TABLE OF CONTENTS**

I.     Introduction ...................................................................................................................1

II.    Argument .......................................................................................................................4

       A.  Charter misstates the law ....................................................................................4

       B.  Charter has no response to the overwhelming evidence that CCI has ratified the
           Spectrum stores in the District ............................................................................4

       C.  Charter's enterprise *does* lack corporate separateness............................................9

III.   Conclusion .....................................................................................................................9

## TABLE OF AUTHORITIES

**Cases**                                                                                                                  **Pages**

*Andra Group, LP v. Victoria's Secret Stores, LLC*, 6 F.4th 1283, 1289 (Fed. Cir. 2021) ..............4

*Bd. of Regents v. Medtronic PLC.*, 17-cv-0942-LY, 2018 WL 4179080 (W.D. Tex. July 19,
    2018) ........................................................................................................................................4–5

*Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111 (Fed. Cir. 2021)..........................................4

*Entropic Comm'cns, LLC v. DIRECTV, LLC*, Case No. 2:22-cv-75-JRG, 2022 WL 19076758
    (E.D. Tex. Oct. 24, 2022).................................................................................1, 5–6, 8–9

*In re Cray*, 871 F.3d 1355 (Fed. Cir. 2017) ...................................................................................8

*Optic153 LLC v. Thorlabs Inc.*, 6:19-CV-00667-ADA, 2020 WL 3403076 (W.D. Tex. June 19,
    2020) ..........................................................................................................................................9

*Soverain IP, LLC v. AT&T, Inc.*, 2:17-CV-00293-RWS, 2017 WL 5126158 (E.D. Tex. Oct. 31,
    2017) ..........................................................................................................................................4

**Other**

*Montes v. Charter Communications, Inc.*, No. 7:21-cv-489, Dkt. No. 1, NOTICE OF REMOVAL
    (S.D. Tex. Dec. 20, 2021) .........................................................................................................6

## INTRODUCTION

Stripped of complexity, this motion should be decided on the Court's precedent. As Entropic addressed in its Opposition (Dkt. No. 27), this Court very recently addressed similar facts in *Entropic Comm'cns, LLC v. DIRECTV, LLC*, Case No. 2:22-cv-75-JRG, 2022 WL 19076758 (E.D. Tex. Oct. 24, 2022). There, DISH argued that the physical stores of its California subsidiary could not be considered places of business of the ultimate DISH parent. DISH made the same arguments Charter does here—about corporate formalities, which entity technically employed whom, and which entity, on paper, provided the services, etc. The Court rejected them. Here, the facts are even more compelling in favor of denying the motion to dismiss.

Charter has now had the chance in multiple briefs spanning thirty pages to explain why the Court's precedent does not apply. This is Charter's complete attempt to distinguish that opinion: "[U]nlike *DirecTV*, all of the evidence shows use of the Spectrum brand, and not any 'Charter' or CCI-specific brand: there are *no* locations in this district that bear the 'Charter' name, and the '*Spectrum*' website (not the Charter website) identifies the *Spectrum* services that are offered at the *Spectrum* stores in this district." Dkt. No. 26, Charter Reply, at 7 (emphasis in original). That's it. Charter asserts the *DIRECTV* opinion is not dispositive here because DISH brands itself as DISH, whereas here Charter calls itself Spectrum. Charter of course does not explain why this would even matter—CCI owns the Spectrum brand and that name is plastered all over the physical locations, employees, and services in the District, establishing ratification. It's also a remarkable argument. In every other way Charter argues that only the formalities matter, except on the dispositive point of this precedent. Then, Charter adopts the opposite philosophy—only perception matters.

1

Aside from being irrelevant, this argument is, like all Charter's others, directly contradicted by the facts. Charter Communications, Inc. *is* "Spectrum." Here is the very first paragraph of CCI's year 2022 SEC 10-K statement, in its entirety:

> **Introduction**
>
> We are a leading broadband connectivity company and cable operator serving more than 32 million customers in 41 states through our ***Spectrum*** brand. Over an advanced high-capacity, two-way telecommunications network, we offer a full range of state-of-the-art residential and business services including ***Spectrum*** Internet®, TV, Mobile and Voice. For small and medium-sized companies, ***Spectrum*** Business® delivers the same suite of broadband products and services coupled with special features and applications to enhance productivity, while for larger businesses and government entities, ***Spectrum*** Enterprise™ provides highly customized, fiber-based solution. ***Spectrum*** Reach® delivers tailored advertising and production for the modern media landscape. We also distribute award-winning news coverage and sports programming to our customers through ***Spectrum*** Networks.[1]

Moreover:

- The end of every CCI press release concludes with either an "About Spectrum" section ("***Spectrum*** is a suite of advanced communications services offered by Charter Communications, Inc. . . .") or an "About Charter" section ("Charter Communications, Inc. (NASDAQ:CHTR) is a leading broadband connectivity company and cable operator serving more than 32 million customers through its ***Spectrum*** brand").[2]

- Charter's Spectrum-labeled invoices tell customers to send their payments to "Charter Communications."[3]

Indeed, it is nearly impossible for a customer not to know that Spectrum is CCI, and CCI is Spectrum. Anyone running an internet search is presented the equivalence immediately:

---

[1] Available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1091667/000109166723000024/chtr-20221231.htm.
[2] *See, e.g.*, https://corporate.charter.com/newsroom/spectrum-network-designers-wanted-for-newly-expanded-center; https://corporate.charter.com/newsroom/2023-spectrum-community-center-assist-programs-at-new-locations; *see also* Dkt. No. 68, Entropic Opposition, at 14–16 (describing Charter's public statements about its Spectrum brand).
[3] https://www.spectrum.net/support/manage-account/understanding-your-statement-bill/.



In summary, Charter's apparent argument that the public does not understand that Spectrum = Charter and Charter = Spectrum borders upon the absurd.

Charter's position simply confirms everything Entropic has argued—there is one operating enterprise nationwide. The *entire* enterprise uses the brand "Spectrum." And as Entropic's Opposition made clear, the contrived lines Charter advances are drawn over the reality of Charter's business. ▆▆▆▆▆▆▆▆▆▆▆▆ the heads of divisions have enterprise wide authority, the employees are shuffled around the whole enterprise, the leases are signed by CCI, etc.

Charter's Reply is strangely focused on whether Charter broke any laws with all these paper contrivances. That is irrelevant. The point is, the regular and established places of business in this District *are* CCI's. CCI controls these locations, CCI has ratified these locations, CCI's employees staff these locations—CCI even signed the leases. This Court should deny the motion.

3

# ARGUMENT

### A. Charter misstates the law.

Charter asserts that Entropic must prove "corporate formalities [were] ignored" because "a subsidiary's presence in a venue cannot be imputed to the parent absent disregard for corporate separateness." Charter Reply at 1, 4 (quoting *Bd. of Regents v. Medtronic PLC.*, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018); *Soverain IP, LLC v. AT&T, Inc.*, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017)).

That is not the law. Indeed, the Federal Circuit has expressly rejected the idea that ratification requires a lack of corporate separateness. *Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1127 (Fed. Cir. 2021) ("Of course, it might be that a parent corporation might specifically ratify a subsidiary's place of business, even if the two do maintain corporate separateness). Corporate separateness and ratification are two separate avenues for establishing venue between corporate relatives. *See Andra Group, LP v. Victoria's Secret Stores, LLC*, 6 F.4th 1283, 1289 (Fed. Cir. 2021).

### B. Charter has no response to the overwhelming evidence that CCI has ratified the Spectrum stores in the District.

Entropic's Opposition presented overwhelming evidence that CCI has ratified the Spectrum store locations. Just to name a few examples, Entropic uncovered evidence in venue discovery that 1) the Spectrum stores all use the same Spectrum▸ logo, which the CCI website explains "is a suite of advanced broadband services offered by Charter Communications, Inc.," 2) the same website directs customers and prospective employees to the store locations in question, and 3) CCI actually signed the lease agreements on behalf of its subsidiary.

Charter dismisses all of this evidence with a curt response:

> Entropic argues that CCI ratified the Spectrum store locations in this district because visitors to the Spectrum website or stores 'believe that the **Spectrum-**

4

> branded stores and **Spectrum** services are provided by CCI.' Entropic provides no support for this statement and cannot show that CCI ratified any store in this district because CCI has maintained the corporate forms and thus, the 'shared use' of 'Spectrum' 'does not detract from the separateness of [its] business.'

Charter Reply at 10 (*citations omitted*). Once again, Charter tries to redirect the Court's attention back to the corporate separateness issue, even though this is not necessary for Entropic's ratification theory. Charter goes on to argue, "[c]ontrary to Entropic's suggestion . . . the formation and execution of an LLC agreement *alone* does not support the conclusion that CCI has ratified any Spectrum store as its own." *Id.* at 10. But this grossly mischaracterizes Entropic's Opposition. Nowhere does Entropic suggest that the mere existence of a parent-subsidiary relationship, or even the existence of an LLC management agreement, is sufficient. CCI actually controls the enterprise (through its authority expressly granted in corporate documents) and actually signed the leases both for the physical store locations and for the equipment used to provide the accused services. CCI has no response to this fact.

Nor can Charter muster a convincing response to the fact that its stores all use the same Spectrum logo. Charter attempts to liken this case to *Bd. of Regents v. Medtronic PLC*, No. 17-cv-942, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018), which involved "the use of the common or generic name Medtronic on the exterior of the building." As addressed in Entropic's Opposition, however, the Spectrum stores do more than feature generic "Spectrum" signage. They use the Spectrum logo. *See* Dkt. No. 27, Entropic Opposition, at 21. Charter insists that this case is distinguishable from *Entropic Comm'cns, LLC v. DirecTV, LLC* because the stores use "Spectrum" branding instead of "Charter" branding. *See* Charter Reply at 7. But this is a distinction without meaning, as addressed above. *See supra* at 1–3.

Because Charter has failed to explain why the result should differ here, this Court's precedent should control. Just like the Dish defendants in *DirecTV*, CCI uses its national website

5

to advertise its services to customers within the District, direct customers to store locations within the District, and promote job openings at those store locations. *See* Entropic Opposition at 15–16, 26; *see also Entropic Comm'cns, LLC v. DirecTV, LLC*, 2022 WL 19076758 at *5. And that is to say nothing of the other facts that were not present in the *DirecTV* case, including Charter's representations to the FCC and Federal Courts (Opposition at 16–18), as well as the evidence that CCI holds out the store employees as its own employees/agents (Opposition at 15–16) and signed the leases in the District (Opposition at 8–9). Charter likewise attempts to downplay these facts, but its arguments ring hollow.

For example, Entropic presented evidence that CCI had, in a previous employment dispute, acknowledged one of its managers as CCI's "agent," even though the manager was technically employed by Charter Communications, LLC. *See* Entropic Opposition at 24–25. Charter attempts to hand-wave this evidence by arguing that "CCI had no need to dispute that fact at the pleading stage." *See* Charter Reply at 9, n.8. Even Charter seems to recognize the weakness of this argument, choosing to bury it in a footnote. Moreover, the case involved a wrongful death action, with Plaintiff attempting to hold CCI liable for the manager's actions. *See Montes v. Charter Communications, Inc.*, No. 7:21-cv-489, Dkt. No. 1, NOTICE OF REMOVAL (S.D. Tex. Dec. 20, 2021) (filed by Charter Communications, Inc.). As such, CCI absolutely had a reason to deny its agency relationship with the manager. But instead, it was CCI who called Mr. Anderson its "agent." See *id.* at ¶ 12 ("Plaintiff has failed to plead facts establishing that Anderson was negligent or grossly negligent because, **as Charter's agent**, he did not owe Ms. Trevino an individual duty") (*emphasis added*).

Entropic also presented evidence that CCI has actual authority over employment matters for its subsidiaries. *See* Entropic Opposition at 6, 23–26. Charter attempts to downplay this

6

evidence, but in doing so misrepresents Entropic's position. According to Charter, "Entropic contends that CCI has the 'right to direct or control the employees' actions,' and that CCI officers 'can direct the work of the employees,' because CCI is a designated manager under LLC agreements." Charter Reply at 8. Again, Charter misses the point. It is not the simple fact that there is an LLC agreement in place between CCI and its subsidiaries; it is the fact that the express terms of that agreement authorize CCI to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Entropic Opposition at 23.

Moreover, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Proost Dep. Tr., Exhibit A to Entropic Opposition, at 85:15–16. Charter characterizes this testimony as confirmation that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Charter Reply at 3. However, the management agreement plainly gives management authority to CCI, not Charter Communications, LLC. Furthermore, it is unclear why CCI—a company that allegedly has no employees of its own—would need to have departments such as Human Resources and Field Operations. *See* CCI Officer List, Exhibit G to Entropic Opposition. Importantly, Charter never disputes that these officers have the power to direct or control the actions of the employees in their department; Charter simply disputes whether these officers have done so in fact, and whether, if they, they did it "in their capacity" as CC LLC employees, not CCI officers, whatever that means.

Finally, Charter has no response to the evidence and testimony that its employees understand themselves to work for CCI. Charter's corporate representative testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See*

7

Proost Dep. Tr., Exhibit A to Entropic Opposition, at 74:12–17. And this is consistent with the numerous Charter employees who list CCI as their employer on LinkedIn. *See* Entropic Opposition at 25–26. Charter dismisses this evidence, noting that "Entropic does not contend that any of these individuals work or operate out of any property listed in the SAC." Regardless, this evidence is emblematic of the relationship CCI holds with Charter employees nationwide. As noted above and in Entropic's Opposition, CCI uses the same national website to promote job openings at its Spectrum stores—just like the Dish defendants in *DirecTV*. *See* Entropic Opposition at 15–16, 26–27. There is no reason to believe that CCI's relationship with E.D. Texas employees is any different from its relationship with employees in other districts or even other states.

Charter dedicates a substantial portion of its Reply to the issue of whether CCI and its subsidiaries have maintained corporate separateness. But this misses the point. As this Court noted in *Entropic Comm'cns, LLC v. DirecTV, LLC*, the Court "need not pierce the corporate veil of [Defendant]'s organizational structure to find that [Defendant] holds the locations… out as its own." 2022 WL 19076758 at *5. Nor does venue hinge on whether CCI exercises *improper* control over its subsidiaries. *See* Charter Reply at 2. The point of Entropic's Opposition is not that CCI overstepped its corporate bounds by signing the property and equipment leases, by ████ ████████ with its subsidiaries, or by using the CCI website to promote the store locations and associated job postings. Rather, the point is that CCI has given its employees and the public every reason to believe that CCI operates the stores and provides the accused services in the District. This is the very essence of what it means to "ratify" a location as Defendant's own. *See In re Cray*, 871 F.3d 1355, 1363–64 (Fed. Cir. 2017) ("Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place").

8

## C. Charter's enterprise *does* lack corporate separateness.

Even setting aside that Entropic need not show a lack of corporate separateness to prevail, that standard nonetheless has been met here. Charter profusely defends that its lawyers have dotted their i's and crossed their t's, and that no Delaware corporate laws have been broken. *See* Charter Reply at 2–6. That, again, is not what the law requires. The standard, which is relaxed for venue, instead requires only that "the corporations disregard their separateness and act as a single enterprise." *Optic153 LLC v. Thorlabs Inc.*, 6:19-CV-00667-ADA, 2020 WL 3403076, at *2 (W.D. Tex. June 19, 2020). Entropic has shown that in spades. *See* Entropic Opposition at 5–13. Regardless of what paperwork Charter submits to Delaware, or how it files its taxes, these corporate lines simply do not exist in Charter's actual business. That's what Charter tells the public and the government (Opposition at 14–18), and Charter has presented no evidence that its employees or officers are even aware of the different entities. Entropic, through the facts revealed in venue discovery, has more than carried its burden to show that Charter's business disregards corporate separateness and acts as a single business enterprise.

## CONCLUSION

Charter's Reply brief fails to present any persuasive reason, factual or legal, why this Court should reach a different outcome from its decision in *DirecTV*. Not only are the same facts present here; venue discovery has confirmed that CCI expressly ratified the Spectrum stores when it signed the property leases on behalf of its subsidiary. For that and the other reasons stated above and in Entropic's Opposition brief, the Court should deny Defendant's Motion to Dismiss the Second Amended Complaint.

Dated: May 19, 2023

Respectfully submitted,

<u>/s/ James Shimota by permission Andrea L. Fair</u>
James Shimota - LEAD ATTORNEY
Jason Engel
George Summerfield
**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Jim.shimota@klgates.com
Jason.engel@klgates.com
George.summerfield@klgates.com

Nicholas F. Lenning
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
nicholas.lenning@klgates.com

Darlene Ghavimi
Matthew Blair
**K&L GATES LLP**
2801 Via Fortuna
Suite #650
Austin, Texas 78746
Darlene.ghavimi@klgates.com
Matthew.blair@klgates.com

Wesley Hill
Texas Bar No. 24032294
Andrea Fair
Texas Bar No. 24078488
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
wh@wsfirm.com
andrea@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record on this nineteenth day of May, 2023.

*/s/ Andrea L. Fair*
Andrea L. Fair

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5, the undersigned counsel hereby certifies that a Motion for Leave to File Under Seal the foregoing document has been filed.

*/s/ Andrea L. Fair*
Andrea L. Fair